Good morning. May it please the court. My name is Tenille Chekovich and I'm appearing today on behalf of the appellant debtors whom I represent on a pro bono basis. With me today are co-counsel Leslie Kendrick of the University of Virginia School of Law and Angela Cholfi from the Legal Aid Justice Center. I would like to reserve five minutes of my argument time for rebuttal. Nearly a million Virginians are currently without a driver's license because of unpaid court debt. The debtors who brought this case lost their licenses because they could not pay the court debt imposed on them. In its opinion, the district court itself noted that the automatic suspension of driver's licenses for inability to pay court debt may very well violate the plaintiff's Despite these readily apparent constitutional violations, the district court dismissed the complaint for lack of jurisdiction under the Rooker-Feldman doctrine, standing, and 11th Amendment immunity. These are the legal issues that I'm here to discuss with you today, but first it's important to understand what relief the complaint actually seeks in this case and what will and will not happen in the real world if the debtors prevail. Fundamentally, this appeal is about whether an order directed to the commissioner would provide meaningful relief to the debtors. It would. If the debtors are successful in proving that the suspension process is constitutionally flawed, the district court could declare the statute unconstitutional, which would invalidate suspensions flowing from it. Moreover, the district court ordered the commissioner to remove the unconstitutional suspensions from the DMV's database and enjoin the commissioner from participating in future enforcement of the statute in an unconstitutional manner. It's the DMV that makes suspensions meaningful because everyone, including law enforcement and the courts, relies solely on the information maintained by the DMV to document and prove license suspensions. That's just a ministerial function on the part of the commissioner, and have you sued the right such as the courts who signed off on the order? Well, with respect to suing the courts, Your Honor, respectfully, I don't think that we would be in a different place if the court clerks were parties to this case. Oh, we enjoin courts all the time. Well, but the government would still be arguing that these various bars, including Rooker-Feldman, apply here. That may be, but the question I think warrants consideration because I have a similar one. Does the Department of Motor Vehicles have any discretion under the statute with respect to the noting the suspensions once it's been issued by the court? No one has any discretion under the statute, including the court. If you could just stay with me for just a minute, but the suspension, as I understand it, please do correct me if I'm wrong, the suspension takes effect when the court order is issued, even before it shows up on DMV's records. So that's certainly a disputed issue in this case, and that's one of the problems that we have here, which is that the district court read the statute in a particular manner, which frankly is contrary to how any of the parties argued it below, including the commissioner, who at oral argument on the motion to dismiss took the position that the suspension was not effective until after the 30 days had elapsed and the person had failed to pay. Why is that a question of fact or not a question of law based on the statute, and it really wouldn't be the Department of Motor Vehicles' argument anyway? So the court interpreted the law, that's correct, but here the plaintiffs are bringing not only a, they're bringing a facial due process challenge, but the vast majority of the constitutional challenge at issue here is an as applied challenge, and in an as applied challenge we have to look to the facts of how the statute is actually implemented. The government can't hide behind the language of the statute and say, well, it's facially constitutional, so we can apply it in an unconstitutional manner. I don't think that's what underlies the question. The statute says that the court suspends the license, and it becomes effective 30 days after conviction. I mean, yeah, and then the clerk of court sends the notice of suspension to the driver, correct? I'm reading, I'm just reading the statute. Well, that's not what happens in practice. But just stay, I mean, that's what the statute says, doesn't it? Well, we disagree with that interpretation. So in our briefing, we explained that the circuit court's legal interpretation is not consistent with other provisions in the statute. So the district court's finding that the order automatically comes into play simply isn't consistent with other provisions, for instance, that allow entry of a payment plan, where it could be months or even years until you have an issue where someone fails to pay, and the suspension may then go into effect. Importantly, in our papers, we have included sentencing orders from these courts that specifically do not check the box for suspension of the license under the statute. The court, in those three instances that we have included, did not suspend the license under this statute, but 30 days later, when the defendant failed to pay the court debt, the commissioner implemented or we have the DMV driver records which show that that occurred despite the lack of any court action. So regardless of what the statute says, the reality is that across the commonwealth, the courts are not implementing the statute. It's the commissioner who is implementing it. Then perhaps you ought to enjoin, perhaps that ought to be your challenge. Well, it may be the case that there's another lawsuit out there, but at this point, the defendant who has responsibility for overseeing the implementation of these suspensions, he's a proper defendant. And the case law holds we don't have to name every defendant in that chain of causation, as long as we have one with a significant enough relationship to the implementation of the statute. That's all we need. We don't have to sue every potential defendant. Importantly, in this case, even if you accept the district court's interpretation of the statute, none of the jurisdictional bars apply. And that's really the crux of the legal issues in this case. Under Rooker-Feldman, the debtors are bringing an independent constitutional challenge to a state statute. And so Rooker-Feldman does not apply, even if you find that the court is issuing the In addition, Rooker-Feldman only applies when a court is actually engaging in a judicial inquiry. And the cases tell us to look at what the court is actually doing, and not just the fact that it's a court taking that action. In this case, as Your Honor pointed out, there is no discretion. The courts are not making any determinations about implementing this statute. Even under the district court's interpretation, it kind of poofs into existence upon the conviction. The court isn't doing anything, or making any findings, or considering any evidence. The question, though, was with respect to DMV, not the court. That the lack of discretion is on the part of DMV, not the court. Well, I understand that. And I would agree. Please don't. Please stop interrupting me. Sorry. Thank you. That the lack of discretion is on the part of DMV. Because as I understand it, the court does have some discretion with respect to the entry or the granting of a repayment plan. But that's a different statute. Well, but there is some discretion on the part of the court with respect to the administration of this plan that DMV does not have, is my only point. Okay. To begin with, we're not challenging the payment plan statute in this case. The court does enter payment plans. In some instances, that's true. I believe it's actually, usually, the clerk's office, to the extent that even happens. But in this case, the debtors have specifically alleged that they were not able to enter into payment plans, and that payment plans were not offered to them. And so here, again, we have, at best, a factual dispute about whether these plans even exist, how they're entered into, what happens with them. But ultimately, the statute being challenged here is the same, whether you have a payment plan or not, in that it does not allow the court or the commissioner to have any discretion about the suspension. The suspension is mandatory, no matter what, if you don't pay. So if you don't pay within 30 days, mandatory suspension. If you get a payment plan, and then six months later, you're hospitalized, and you can no longer make your payments, automatic suspension, with no consideration about what the circumstances are there. So there is no discretion at any time, and that's precisely the crux of the debtor's complaint, that this statute doesn't allow for any process about the suspension of the license itself, which is mandatory. The debtors have alleged standing here. Did you have a question, Your Honor? No, thank you. The allegations in the complaint clearly establish a genuine nexus between the debtor's inability to drive legally, and the commissioner's implementation of the license suspensions. Even if the district court's finding that the courts issue the suspension is upheld, the debtor's injuries are directly traceable to the commissioner's conduct in implementing those suspensions, which can't be accomplished legally under Virginia Court of Appeals law, unless and until the DMV takes action, regardless of upstream activity by the courts. And the declaratory and injunctive relief being requested here would redress many of the harms suffered by the debtors. Once the commissioner removes the unconstitutional suspensions from the database, the debtors would no longer be obligated to pay reinstatement fees. They would not be arrested for driving on suspended licenses, and they would be able to provide proof of a valid license to prospective employers. The fact that the debtor's injuries are redressable by an order directed to the commissioner is further evidenced by legislation pursuant to which the commissioner right now is developing a system that will allow debtors to pay their court debt in the DMV and obtain their license reinstatement with no involvement by the court. If the commissioner's customer service representative... Is this in the record? Yes, it is. And the actual legislation, as well as the commissioner's report, is in the appendix. Thank you. Could I just ask one other thing? For purposes of the relief you seek, you would like us to enjoin DMV from entering the suspension into its database? That's correct. There would also be a declaration that the statute is unconstitutional as it's applied to those who can't afford to pay... By DMV? Yes. Okay. The commissioner, finally, is not entitled to immunity. Even if the state courts issue suspension orders by the commissioner's own admission, and this is at JA-177, he, quote, implements such orders. And the implementation of those orders alone is sufficient to satisfy the Ex Parte Young standard. Suspensions intimately involve the DMV, which is named in the statute nine times. In Ex Parte Young, the Supreme Court held that a state official is properly a defendant when the official, by virtue of his office, has some connection to the enforcement of the act. They refer to that as a special relationship, right? And clearly, he does have a special relationship. The DMV and the commissioner are named nine times in the statute. He takes specific action to implement the suspensions. In fact, DMV is the only entity that implements the suspension. Even if you accept as true that the court orders the suspension, nothing would happen without the DMV. Without the DMV, law enforcement would not be aware there was a suspension, and there would be no enforcement of those orders possible. That is the function of DMV, as they've admitted in their papers. The official need not be the primary authority. It's sufficient he has authority to act in furtherance of the statute. And here, this agency, of which the commissioner is the head, oversees all licensure of drivers. As such, he does have the special relationship that's necessary to apply the exception. The federal courts have an unflagging obligation to exercise jurisdiction when it's present. The jurisdictional issues on appeal here all represent rare exceptions to that general rule encouraging the exercise of jurisdiction. And this case does not fit into those narrow exceptions. The commissioner's arguments, which are based on a feigned ignorance of the manner in which the license scheme operates in practice, should not be permitted to bar the debtors and the hundreds of thousands of Virginians like them from the courthouse. That's particularly true in light of parallel litigation proceeding in Michigan and Tennessee, where the Sixth Circuit has allowed the Michigan case to proceed with a preliminary injunction in place that was entered at the end of December. And that case is Fowler v. Johnson. The Eastern District, Michigan case cited is 2017 Westlaw 637-9676. And the Sixth Circuit case is case number 17-2504. Ms. Jekovic, you might be right on all your arguments, but as to Rooker-Feldman, as to the fact the commissioner's not entitled to the 11th Amendment of Immunity, but how do you get by our longstanding law that if a case is dismissed without prejudice, we don't have jurisdiction to hear that case? Well, it's not the case. It's actually if the complaint is dismissed without prejudice. And so if you look at the Fourth Circuit cases cited by the commissioner, they draw a distinction between orders that dismiss the case versus the complaint. Here, both of the district court's orders dismissed the case without prejudice. That is considered a final order under this court's precedent. The orders did not simply dismiss the complaint. And I think it's clear from reading the district court's opinion that he doesn't think there's any way this case could proceed with an amended complaint. So we would argue that we do have a final order. Of course, to the extent this court wanted to remand with leave to amend, we certainly think any deficiencies could be addressed. But clearly, our argument is there were no deficiencies in the complaint. It pled a sufficient cause of action that should go forward on the merits. Thank you. Mr. Cox. Mr. Chief Judge, and may it please the court. Trevor Cox from the Virginia Attorney General's Office on behalf of Richard Holcomb, the commissioner of the DMV. Under 46.2-395, the law that appellants challenge, it is only a court that suspends a driver's license for failure to pay court debt. That presents several procedural bars to their claims, and the district court was correct to dismiss for three reasons. First, appellants lack standing to bring their suit because there's no redressability or traceability for the injury that would run to the commissioner. The source of their grievance is that one or more courts suspended their license under 395. But no relief against the commissioner can fix that problem for them. Second, the commissioner is entitled to immunity under the 11th Amendment for the same reason. He was not responsible for suspending appellant's licenses and lacks the requisite special relation that this court has held is necessary for Ex parte Young to apply. Third, a federal lawsuit is not a proper vehicle for appellants to invalidate the state court orders suspending their licenses because under Rooker-Feldman, they cannot sue in federal court to undo the injury caused by a state court order, which is here the suspension of their license. So the district court provided three reasons for dismissing the case, any one of which is sufficient to bar their case, at least as it's presently constructed. But they're not challenging the adjudication of guilt. They're only challenging the consequence of the conviction. That's correct. But they are challenging the suspension of their license as a consequence of that order. They're not challenging the legitimacy of the state court. They're challenging the implementation by DMV of the penalty, which is a little bit different from Rooker-Feldman, which looks at, as I understand Rooker-Feldman, which looks to the merits of the underlying offense. Yes, I think they certainly try to pin the consequences on the DMV. But as Your Honor spelled out earlier in looking at 395, it's the court that suspends the license. It's not the commissioner. And Your Honor cited 395B, which says the court shall forthwith suspend. But there's also other language in the statute that makes that perfectly clear. 395C says that if there's no payment by the debtor, then the record of the license suspension shall be sent to the commissioner. So there's no role for the commissioner to play until after there's a license suspension already. 395D also provides for situations where the person pays after the time the suspended license has been transmitted to the department. And then finally, 395E provides for an issuance of restricted license by the court that suspended his license. So it's clear that it's the court that's suspending the license, even if that information is transmitted to DMV. What about the distinction the appellates talk about as between the dismissal of a case or dismissal of a complaint in light of what the district judge said? He was careful to remark that an amendment, that I assume that's an amendment to the complaint, could possibly cure the deficiencies identified. Right, and we picked up on that in our brief to suggest that maybe this court would lack appellate jurisdiction if he thought that amendment would cure the deficiencies. And I think in the Goode case that was discussed or at least referenced earlier, distinguishing between whether you're dismissing a complaint or the action, you look to whether there are indicia to determine whether or not amendment would cure the deficiencies. We don't think that, you know, short of adding another defendant, the complaint could be amended to make this a proper action just because of the way the statute operates. Right, it's just the way the district court framed it, the dismissal, sort of teases out that question. But you think it doesn't, I mean, you think that, you think amendment would be futile in any case, I guess. Well, I think short of adding a defendant, just because of the jurisdictional bars that attach to misconstruing the plain language of the statute. It's clearly the court that's suspended. I'm sorry, Your Honor. No, your colleague on the other side says it's a factual dispute, not a dispute of law, that in practice the statute may operate differently than the language of the statute suggests. They do suggest that. But I don't think any discovery or extra jurisdictional facts are necessary to tease that out. In the 24th Senatorial Republican District versus Alcorn case, which I think, Judge Gregory, you were on, you made a distinction between, made a distinction between, you know, construction of the plan, which is clearly a legal matter, and, for instance, the jurisdictional facts that were necessary in Kern's case where you had to establish whether an employee was acting within the scope of their employment. Those are different kinds of jurisdictional facts. If you have a statute in front of you and you're construing it, that's clearly a legal question, not a factual matter. Well, with regard to the judge's interpretation of 42-395, he just, it appears to me, that he relied on his own interpretation of the statute instead of the facts as it lays. Well, wasn't he supposed to accept the facts as it lays? That's true. And did he do that in this case? I don't think you have to accept legal conclusions masquerading as factual allegations. I think the low case law on that is pretty clear. And that's, I think that's what's happened here. Those allegations are pitched as factual allegations, but they're really trying to go to a legal conclusion. So the 395 makes clear that it's a court that suspends the license. And other parts of the code make that clear, referencing suspension by a court under 395. And that distinguishes it from a few of the authorities that Ms. Chekovich and her colleagues rely on. Reference to the Michigan case, for instance. And as I understand the Michigan law, it says if there's debt that's not paid, the Secretary of State shall suspend. So there's clear language that gives that proper defendant that role. They also rely on the Plummer case. You said that's a distinction in Michigan because the Secretary of State of Michigan does it? Shall. Shall. Based on the fine not being paid, right? That's right. So the responsibility. And what about the DMV commission? Same thing, right? Based on the fines not paid. Suspension, correct? Right, but here it's the court that's suspending, not the DMV commission. But in Michigan, these fines are not generated by court action? No, they are. Same thing. You're making the distinction without a difference. Well, the distinction is that under Michigan law, the commissioner can cancel a license. But in Virginia, a commissioner cannot. That used to be the case 30 years ago that the commissioner of the DMV could, excuse me, the commissioner of the court could suspend licenses for court debt. But in 1993, the General Assembly changed that so that it was only the court that could do it. And the clerk of court would then send out the information regarding the license suspension. And if it was not paid, then it would take effect. So the Plummer case in which they were lies, you know, 25 years old and interprets a prior law. So you're saying that if the Department of Motor Vehicles becomes the entity that issues the suspension, that it would change our analysis pretty dramatically then? I think so, because the code clearly says that it's the court that has the power to suspend licenses. The commissioner is informed of that fact. Here, the commissioner is the administrator. That's right. And so there's no... I understand if legislation goes into effect that makes the commissioner responsible for reinstating a license, that affects the result in your hypothetical, doesn't it? Are you referring to the legislation that Ms. Chekovitz referenced? Okay, I think she's referring to 19.2-349.1, which went in a few years ago that would allow DMV to accept payment on behalf of courts. But they said in that same statute, however, in no case shall the Department of Motor Vehicles be authorized to establish an installment plan for any such payments or receive partial payment. So clearly there's no discretion for the commissioner to engage in that kind of negotiation with debtors about what's appropriate. And that's really... No, thank you. I appreciate that clarification, because I thought she was talking about some legislation that was being contemplated that would make the DMV commissioner responsible for the determination and the cancellation. I don't think there is. There is definitely other legislation out there. I think every year there are attempts to change the statute, but as currently enacted, that's not the case. Mr. Cox, do you think this court has the power to reach the constitutional question raised by the plaintiffs? I don't think so. That's why we have these jurisdictional requirements. If there's not a proper defendant, against whom relief can be ordered, that would redress their injuries. The DMV commissioner is the one who stands. It's like, for example, in the Bostick case, in those cases in terms of marriage cases, many of the people who were there, they said, I don't do this. It's not me. I don't make a choice as to who gets a marriage license. If it's the same sex, I can't get it. We weren't barred from reaching the question of whether or not you're violating equal protection by deciding who a person could love or not love and marry. So you're saying that this question of economic justice cannot be reached because DMV is the only person there? That holds back the hand of the court to reach this constitutional question? I think it's a question of Article III power, Your Honor. And in the case of Bostick- Article III power says we can reach constitutional questions raised under the Constitution. Article III? If there's jurisdiction to hear them, then certainly, Your Honor. In the case of Bostick v. Ranney, I believe Your Honor is referencing, Janet Ranney was the state official who actually granted or denied marriage licenses. Any option? Did she have any options as to if the applicants were same sex? Did she have any option not to grant it? No, but she was the one actually doing it. Whereas here, the commissioner is not actually the one that's with discretion. The commissioner is doing it. It's carrying out the will of the state is a question of whether or not that is unconstitutional in terms of economic justice. Nearly a million Virginians, many of whom, because of their poverty, can't drive. Poverty alone. And there's no differentiation between someone who's a recalcitrant, refusal to pay versus the inability to pay. That's the constitutional question. There are many people who have felons. They can't make parole. They can't get to their parole officer. They can't get jobs. The turning cycle, because they don't have an opportunity to have a car. Cars are no longer some luxury. So that's the issue. That's the constitutional question. And you're saying that because, like, well, I don't do it. I'm just DMV. Well, no, they do it. The question is, does the Constitution have to be looked at in a court, a federal court? This question. Rooker-Feldman is just absolutely wrong in terms of that. That alone would be enough to send this case back. That alone. Your Honor, these are very important questions and issues, and we don't dispute that at all. Our point is that whether it's an important case or a not-so-significant case, there has to be jurisdiction for the court to actually entertain those questions, which would, you know, if the court were to offer an opinion, it would have to be jurisdictionally sound, whether it's, again, a very important question or a very insignificant one. And if there's no redressability here for the plaintiffs to actually get the relief they want, then that is fatal to their claims. There are other options for them. I mean, all of these individuals can go back to court and negotiate repayment plans. They can have community service in lieu of paying fines. I'm sorry, Your Honor. I just had a question about that. I had a question about the allegation that there were no, that it was final and certain when under the statute, there are provisions for repayment plans and community services. And I was wondering why maybe jurisdictional discovery would have been helpful because I would know, for instance, why that isn't an option that addresses the concerns as framed against the Department of Motor Vehicles. If the individual, and the statute appears to contemplate a repayment plan and alternative means of obtaining the reissuance of a license, would, and my question, rambling question is, would jurisdictional discovery help on that issue? I don't think so, Your Honor. I raise it in the context of there are other approaches for appellants to take here. Just because this particular suit is currently constructed may not be successful for the reasons we're discussing. That doesn't mean they can't get relief. They just have sued the wrong person. And those issues about whether they can get community service doesn't affect whether it's the commissioner that they should be suing or the court. It's clearly the court or the clerks who actually have power to suspend or lift the suspension of those licenses. Who should they sue? Well, if they wanted to do it as a broad class action, I think the court or the clerk. But there are other ways on an individual basis that they can raise these same issues. And individual cases in state court. Against the court? I think so. State attorney general? I'm just trying to understand. There's a legitimate substantive question, but there's a serious standing problem here. And I'm trying to understand what... There's some procedural hurdles before you get to the constitutional issue. One is the question of whether or not we even have jurisdiction because the complaint could possibly be amended. The second is whether there's traceability and redressability because as I read the statute, it seems pretty clear to me the DMV only becomes involved at all in the ministerial process of noting a pre-existing suspension. The suspension went into effect when the court ordered it. Right. And we agree with your honor about that. So there's no redressability because even if they get the relief they want, which is striking the evidence of those suspensions from the DMV database, that doesn't change the fact that the licenses are suspended. And so it doesn't really get them where they want to go. It's amazing. You think about these cases in the 60s with segregated counters and things like that. You say, well, you know, I'm a nice restaurateur. I don't have any problems with people of color, but state law says I can't. So you sue them. They say, well, have you sued the restaurateur? They said, I'm following the law. So you're saying you can't get at this, and that, for example, invidious discriminatory practice of segregation, those cases. It's amazing that view. You would never get to those cases because no matter, in Berea College, for example, a case where they wanted to have a diverse school population, Supreme Court said, no, you have to follow Kentucky law of segregation. You cannot integrate your college. Cannot. And so you're saying we can't get, for example, we haven't decided that. For example, just hypothetically, we couldn't get at Virginia's unconstitutional, hypothetical, because it's not reached there, but unconstitutional practice of economic injustice in terms of, in this case, this constitutional question, because everybody says, it's not me. It's the court. Oh, it's not the court. I'm just doing it. No, there has to be some body. There's a hand that has to be accountable to the Constitution, because otherwise the whole body of law that changed the trajectory of this nation would never have occurred if the federal court's hand was tied just because, oh, no, no, Alabama says I can't do this. No, no, the buses in Montgomery are segregated, not because of Montgomery, but because of the law of the state. So are you saying that you sue the court, the clerk of the court? In Virginia, the clerk of the court is a constitutional officer. You do know that, right? Yes, Your Honor. And they could sue them, sue the court? There are lots of options for appellants to get relief. What I'm saying is the court is bound by the case or controversy requirement. There's got to be a lot of controversy. You have to have proper parties. And that's true regardless of the context of the case, what issue is involved. And ultimately, especially when it's an important issue, you want to make sure that the result is jurisdictionally sound. And it's not going to be poked at because the procedural requirements had not been met. Well, you're certainly not suggesting that if we write an opinion, it wouldn't be jurisdictional sound, are you? That's inevitable, right? It should be. And that's why we're here arguing. No, it is. Go ahead. OK. We don't have something presented quite. I see this case, I guess, a little differently. The question of economic justice is profound and disturbing. I'm just trying to figure out if the DMV stops issuing the licenses, the license is still suspended. So it's just a redressability issue. And that's why I keep coming back to why, possibly, isn't some jurisdictional discovery useful here? I've asked this before, and you take my point. I do, Your Honor. And if I may just respond briefly. Certainly. We certainly agree with you that redressability is probably the strongest, clearest way to show the procedural hurdle here. But I don't think the jurisdictional discovery is necessary because the statute is perfectly clear. Thank you. Thank you, Mr. Cox. Ms. Cekovic, you have some time reserved. First, I'd like to address the questions about whether the complaint could be amended and how that affects jurisdiction here. Despite the comment in the district court's opinion, it's clear that nothing that we could do to amend the complaint is going to change the district court's interpretation of the statute. And so unless the court is instructed that it must consider the factual allegations on the motion to dismiss, there simply is going to be no movement with an amendment. And that's really the crux of the fundamental mistake here. The commissioner can't have it both ways. He raises a jurisdictional question and says it's a factual challenge, but then encourages that everyone ignore the reality and the factual allegations in the complaint about what happens with implementation and look only to statutory language. What is the problem with approaching? I don't quite understand, since your focus is on the facts. The problem with working out a payment plan or alternative service, which I understand to be available through the court. Well, we have alleged that those are not actually available to the vast majority of the debtors. So they are not informed that those options exist. Many courts don't actually have those options implemented. And so there actually is no opportunity. And even when, as we've alleged in the complaint, one of our debtors did enter into a payment plan, the terms were so onerous that they couldn't possibly afford it. And so immediately defaulted because there's nothing in the statute that requires that courts consider ability to pay for those payment plans. And ultimately, when they can't pay, it's automatically suspended. I did want to address the standing question because your honor... It's suspended by the court, correct? Well, that is not what we've alleged happens in practice. But I understand that that's your reading of the statute. I'm sorry, but I'm reading the language of the statute. That's illegal. But again, the state can't hide behind the language of a statute implemented in a way that's different and then say, well, the language says it's constitutional. You know, ultimately, the state through the DMV is implementing these suspensions. And if it's doing it in a way that's inconsistent with the statute, they can't survive an as-applied challenge on the grounds that the language of the statute protects them. Okay, so just factually, the license is suspended by the court. Suppose we enjoin the Department of Motor Vehicles from entering the suspension into its database. Does that remove the suspension on the court's records? Because the court has already notified the party. Would it be... Why isn't that a court... You see where I'm going with this. Yes, but there's a distinction between the records maintained by the court and the records maintained by DMV. The court actually does not maintain a record that says the license is suspended. It maintains a record that says a debt was owed and payment was not made. So what's the notice that the clerk sends to the parties? That is actually a notice that something may happen in the future. It's not notice... I'm sorry. May happen if the license is suspended for lack of payment, for satisfaction, right? Right. So at the time that is sent, that is a purely hypothetical piece of information about something which may or may not happen potentially years down the road if in theory you had a payment plan. So that's not sufficient notice of the suspension. That actually has to happen later by the DMV and the Plummer and Carew cases make that clear. The Virginia State Courts have held you need the notice to come from the DMV once the failure to pay has occurred. But to address the redressability question, even under the district court's interpretation of the statute, accepting that as fully correct, the debtors have established redressability. As the district court itself notes in the opinion, an order removing the debtors unconstitutional suspensions from the database would, and this is a quote from the opinion, decrease the likelihood plaintiffs will be charged with driving on suspended licenses. And it would also, we've alleged, alleviate other harms suffered by the debtors at the commissioner's hands, including the need to pay hefty reinstatement fees. And reinstatement is entirely controlled by the commissioner. The courts have nothing to do with reinstatement under this statutory scheme. And I was about to say, you could pay 100% of the court fine and fees and DMV, you still can't drive. Is that correct? That's correct. I'm a Virginia lawyer. I think I still remember the law by that. That's correct. And so ultimately the debtors have to get the DMV to reinstate the license. And so the DMV can give them relief in this case. This is a challenge to an overall enforcement scheme. No one has discretion here about the suspension. It's mandatory under the statute. If anything, it's the legislature and the statute that has undermined the dignity of the state courts here, not this lawsuit. Thank you. Thank you. We'll come down, greet counsel, then proceed to our next case.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd